AMELIO E. BLONDET, Plaintiff and Appellant, v. SUCCESSORS OF TOMÁS CANO & CO., LTD., and EUGENIO DALMAU, Defendants and Appellees.

No. 3322. Argued November 18, 1924.—Decided May 20, 1925.

1. INTERVENTION—PLEADING—EVIDENCE—TITLE.—A defendant in an action of intervention who alleges as a special defense in his answer that the title of the intervenor is false and simulated may introduce evidence tending to show that the said title is false, fraudulent and simulated.

2. ID.—ID.—ID.—ID.—The defendant in an action of intervention may prove lack of title in the intervenor by showing that his grantor, although not a party to the action, had no conveyable title.

District Court of Guayáma, Gabriel Castejón, J. Judgment for the defendants in an action of intervention. *Affirmed.*

*José J. Aponte* for the appellant. *Manuel A. Martínez Dávila* for the appellees.

MR. JUSTICE ALDREY delivered the opinion of the court.

Successors of Tomás Cano & Co., Ltd., brought an action of debt against Eugenio Dalmau and on March 16, 1920, attached a house owned by him but not recorded in the registry of property.

When the house was about to be sold in execution of the judgment Amelio E. Blondet brought an action of intervention against the parties to that action praying that the attachment be dissolved on the ground that the house belonged to him. He alleged that prior to the attachment the house belonged to Elisa Dalmau who in May of 1921 sold it to Dr. José María Muñoz, but later this sale was rescinded and on December 19, 1921, Elisa Dalmau sold it to intervenor Blondet, all of which appears from public deeds.

Eugenio Dalmau defaulted in the action of intervention, but the defendant firm answered and set up the following defenses: That on July 8, 1919, Eugenio Dalmau made a simulated sale of the house to his sister Elisa Dalmau without price or consideration, a fact which was known to intervenor Blondet, to whom at that time Eugenio Dalmau owed the sum of $550; that with the assistance of Euge-

nio Dalmau Blondet induced Elisa Dalmau to acknowledge the said debt, although she owed him nothing; that the firm attached the house before Elisa conveyed it to Blondet, a fact known to him for the reason that in December of 1921 he sued Elisa Dalmau and petitioned for the attachment of the house, but the petition was withdrawn because it had been attached already by the firm; that he knew that the firm had attached the house as the property of Eugenio Dalmau, because, at the instance of the firm and on that ground, an execution levied by Blondet on the said house was stayed; that when Amelio E. Blondet ascertained that the house had been attached and his credit was not preferred he caused Elisa Dalmau to convey the house to him in payment of the debt of $550 owed to him by Eugenio Dalmau and not by Elisa Dalmau, as was falsely stated in the mortgage deed of acknowledgment; that the house had been always the property of Eugenio Dalmau, although at different times it had appeared as owned by his sister Elisa, by Dr. José María Muñoz and finally by the intervenor, all of which facts Amelio E. Blondet knew, as well as that while the house was under attachment by the firm it had always been in the possession of Eugenio Dalmau.

After trial the court below rendered judgment dismissing the action of intervention and the party aggrieved took the present appeal.

[1] We have transcribed in substance the defenses set up by the defendant firm for the reason that the plaintiff moved the lower court to strike them out and now assigns error on the part of the court in overruling that motion, alleging that as Elisa Dalmau and Dr. José María Muñoz were parties to the action of intervention, contracts in which they participated can not be attacked as void.

In the case of *Pillot v. Domínguez*, 24 P.R.R. 601, this court held that in actions of intervention it is necessary to

decide the fundamental question involved; *i. e.*, who is the owner of the property attached. And in *Alvarez* v. *Successors of Narciso Vilaró, Ltd.*, 27 P.R.R. 723, it was held that in an action of intervention in which the plaintiff alleges that he is the owner of a certain property attached by the defendant and produces a title deed in support of his 'allegation the defendant, under a general denial in his answer, may introduce evidence to show the false, simulated and fraudulent character of such title, and in support of that doctrine we cited 6 C. J. 395 and 396, section 887. Therefore, if a defendant in an action of intervention is permitted to introduce such evidence under a general denial, certainly he must be allowed to do so when the simulation or falsity of the plaintiff's title is specially set up as a defense in the answer, as in this case.

[2] As regards the allegation that the defenses are unavailable because they attack title deeds to which Dr. Muñoz and Elisa Dalmau were parties while they are not parties to this action, it will suffice to say, as far as Dr. Muñoz is concerned, that inasmuch as he rescinded the deed executed in his favor by Elisa, it is not important in this action whether or not his title was simulated, and with regard to Elisa Dalmau, her title of purchase from her brother can be attacked, although she is not a party to this action, for the reason that the defendant firm has a right to prove lack of title in the intervenor by showing that his grantor had no conveyable title.

The third assignment to the effect that the court erred in holding that the firm could allege and prove the fraudulent origin of the intervenor's title has been disposed of in considering the first assignment.

The second assignment is also impliedly disposed of in considering the first, for it is alleged therein that Eugenio Dalmau should not have been permitted to testify concerning the invalidity of the contract of sale to his sister and

of the mortgage created by her in favor of the intervenor, for the reason that Elisa Dalmau is not a party to this action.

The fourth assignment is also without merit, for, as we have said, Eugenio Dalmau could testify as to the invalidity of the deed of sale which he executed in favor of his sister and on the merits of his testimony that contract could be held to be simulated.

The other grounds of appeal may be considered jointly, inasmuch as they refer to the evidence.

From the evidence it appears that in building the house in question Eugenio Dalmau became indebted to the defendant firm for lumber furnished for that purpose; that in 1919 he conveyed the house to his sister Elisa to prevent its being attached and to avoid constant claims that were being made against him, but the sale was not real and he always held possession of the house notwithstanding the sale; that on March 16, 1920, the firm attached the house as the property of Eugenio Dalmau; that when Amelio E. Blondet demanded of Eugenio Dalmau security for his claim the latter offered to pledge the only property that he had, a house which appeared in the name of his sister and which was the object of litigation; that after the attachment of the house by the firm Elisa Dalmau created a mortgage on it for $550 in favor of Amelio E. Blondet although it was not her debt, but the debt of her brother, following whose instructions she signed the mortgage, and that she afterwards sold the house to Blondet.

These facts are sufficient to establish the simulated character of the sale by Eugenio to his sister, of the mortgage created by her in favor of Blondet and of the sale to him in satisfaction of that mortgage. They show also that Blondet had knowledge of the simulated character of the sale to Elisa by her brother regardless of the fact that Eugenio Dalmau testified to these facts, for this question is

governed by the rule laid down in *Rosado* v. *Rosado,* 17 P.R.R. 447, to the effect that the essential elements of all contracts may be the subject of investigation and proof at a trial for the purpose of determining their validity, and the doctrine of estoppel is not applicable to the admission of a vendor with respect to the receipt of the purchase price in a contract set out in a public document so as to prevent him from contradicting his admission and contesting the existence of a consideration.

For the foregoing reasons the judgment must be affirmed.